IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERSKINE KENT,**<br><br>Plaintiff,<br><br>*v.*<br><br>**DRIVETIME CAR SALES LLC,**<br><br>Defendant. | **CIVIL ACTION**<br><br>NO. 2:20-cv-02529-KSM |

MEMORANDUM

**MARSTON, J.**                                                                                          **July 10, 2020**

Plaintiff Erskine Kent brings this action against Defendant DriveTime Car Sales LLC alleging that DriveTime knowingly and fraudulently sold Kent a defective vehicle. Presently before the Court is DriveTime's Motion to Compel Arbitration and Stay Proceedings. For the reasons discussed below, the Court will grant DriveTime's motion.

I.

Taking the facts in Kent's complaint as true, in September 2017, Kent purchased a vehicle from DriveTime. (Doc. No. 1-5, ¶ 5.) Before Kent purchased the vehicle, DriveTime represented to Kent that the vehicle had not been involved in any accidents nor had any collision damage or repairs. (*Id.* at ¶¶ 10, 13–14.) However, the vehicle was defective when it was delivered to Kent, which resulted in Kent having multiple issues with the vehicle, including failing a state inspection. (*Id.* at ¶¶ 7–9.) In February 2019, Kent's vehicle was examined, which revealed several physical defects, including evidence of a prior collision. (*Id.* at ¶¶ 11–12.) Such defects reduced the value of Kent's vehicle. (*Id.* at ¶¶ 15–16.)

At the time Kent purchased the vehicle from DriveTime, Kent and DriveTime entered into a Simple Interest Retail Installment Contract ("Sales Installment Contract"), which was attached as Exhibit A to Kent's complaint. (Doc. No. 1-5, Ex. A, pp. 14–19.)[1] A section of the Sales Installment Contract reads, "**Arbitration Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by reference into and is a part of this Contract" ("Arbitration Agreement"). (*Id.* at Ex. A, p. 18 (bold in original).) The referenced, though separate, Arbitration Agreement was also signed by both Kent and DriveTime as part of the vehicle-purchase transaction, and was also attached as Exhibit A to Kent's complaint.[2] (*Id.* at Ex. A, pp. 65–69.)

As a result of the purportedly defective vehicle, and notwithstanding the Arbitration Agreement, Kent filed his complaint against DriveTime in the Court of Common Pleas of Montgomery County. (Doc. No. 1, ¶¶ 1–5.) Kent brought claims for fraud/fraudulent misrepresentation, violation of the Unfair Trade Practices and Consumer Protection Law, and violation of the Pennsylvania Motor Vehicle Sales Finance Act. (Doc. No. 1-5, ¶¶ 17–30.) DriveTime removed the case to federal court (Doc. No. 1), and subsequently filed its motion to compel arbitration (Doc. No. 5). Kent then filed his opposition to DriveTime's motion (Doc. No. 8), and DriveTime filed its reply brief (Doc. No. 11). DriveTime's motion is now ripe for review.

---

[1] The Court notes that the copy of the Sales Installment Contract attached as Exhibit A to Kent's complaint is signed only by DriveTime. Kent's complaint, however, cites to Exhibit A as evidence of Kent's purchase of the vehicle from DriveTime. (Doc. No. 1-5, ¶ 5.) As well, DriveTime attaches a copy of the Sales Installment Contract to its motion to compel arbitration, which is signed by both Kent and DriveTime. (Doc. No. 5-3, pp. 2–6.) Kent then uses this same copy—signed by both parties—as Exhibit B to his brief opposing DriveTime's motion. (Doc. No. 8-1, Ex. B, pp. 11–16.)

[2] The Arbitration Agreement expressly allowed Kent to reject the Arbitration Agreement up to thirty days after entering into the Sales Installment Contract. (Doc. No. 1-5, Ex. A, p. 67.)

II.

"[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard. . . ." *Guidotti v. Legal Helpers Debt Resolution, LLC,* 716 F.3d 764, 776 (3d Cir. 2013) (internal citations and quotations omitted). In deciding a motion under the Rule 12(b)(6) standard, "courts accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff . . . ." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). While the court must accept well-pled factual allegations in the complaint as true, the court may disregard any legal conclusions. *Id.* at 210–11; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding the motion, the court may consider "the complaint, exhibits attached to the complaint, and matters of public record." *Levins v. Healthcare Revenue Recovery Grp., LLC*, 902 F.3d 274, 279 (3d Cir. 2018) (internal citations and quotations omitted).

III.

Section 2 of the Federal Arbitration Act provides that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the court must determine whether the particular dispute is arbitrable, "[a] motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

A district court looks to relevant state law on the formation of contracts to determine if a valid arbitration agreement exists. *See, e.g.*, *First Options of Chicago, Inc. v. Kaplan,* 514 U.S.

938, 944 (1995). A federal court sitting in diversity must apply the substantive law of the state in which the court sits, including its choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, the parties agree that Pennsylvania law applies.

In opposing DriveTime's motion, Kent does not dispute that the Arbitration Agreement exists and that he signed it. (Doc. No. 8; *see also* Doc. No. 1-5, Ex. A, pp. 65–69 (signed Arbitration Agreement attached to complaint).) Neither does Kent dispute that his claims fall within the scope of the Arbitration Agreement. (Doc. No. 8.) Rather, Kent's sole argument is that the Arbitration Agreement is invalid and unenforceable under Pennsylvania law because it is "outside of the [Sales Installment Contract]." (*Id.* at pp. 3–6.) In support of his argument, Kent relies on two cases: *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. Ct. 2013) and *Gregory v. Metro Auto Sales, Inc.*, 158 F. Supp. 3d 302 (E.D. Pa. 2016).

In *Knight*, despite the buyer's order containing an arbitration agreement, the court held that there was no enforceable arbitration agreement between the plaintiff-buyer and the defendant-seller because the separate sales installment contract did not contain an arbitration agreement. *Knight*, 81 A.3d at 943, 948–49. The *Knight* court opined that the buyer's order—including its arbitration agreement—was "subsumed" by the sales installment contract pursuant to the Pennsylvania Motor Vehicle Sales Finance Act. *Id.* at 948. As well, the court noted that the sales installment contract stated it constituted "the entire agreement" between the parties. *Id.* As such, because the sales installment contract itself did not contain an arbitration agreement, there was no enforceable arbitration agreement. *Id.* at 948–49. Likewise, following the reasoning in *Knight*, the court in *Gregory* reached the same conclusion. *Gregory*, 158 F. Supp. 3d at 305 (concluding that the buyer's order—and its arbitration agreement—was subsumed by the sales installment contract,

and because the sales installment contract did not contain an arbitration agreement, there was no enforceable arbitration agreement).

Kent's reliance on *Knight* and *Gregory*, however, is unavailing as both cases are fatally distinguishable to this case. Unlike in *Knight* and *Gregory*—where the separate buyer's order, and its arbitration agreement, were subsumed by a sales installment contract that made no mention of arbitration—here, there is no separate buyer's order at issue. Instead, the Arbitration Agreement itself is explicitly incorporated into the Sales Installment Contract. The Sales Installment Contract between Kent and DriveTime states:

> **Arbitration Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by reference into and is a part of this Contract.

(Doc. No. 1-5, Ex. A, p. 18.) Thus, under the express terms of the Sales Installment Contract, the Arbitration Agreement "is a part of this Contract." As such, even if all agreements other than the Sales Installment Contract were "subsumed," it cannot logically be said that the Sales Installment Contract subsumed itself.

Moreover, unlike in *Knight* where the sales installment contract expressly stated that it contained "the entire agreement" and made no mention of arbitration, 81 A.3d at 948, here, the Sales Installment Contract expressly includes the Arbitration Agreement (Doc. No. 1-5, Ex. A, p. 18). For these reasons, *Knight* and *Gregory* are easily distinguishable from the case before this Court.

In response to the Sales Installment Contract's incorporation of the Arbitration Agreement, Kent simply states that "the Sales Installment Contract invalidly incorporates by reference a distinct and separate document, i.e. the Arbitration Agreement." (Doc. No. 8, p. 6.) Kent does not provide any legal support for this conclusory assertion. Even if Kent were to rely on *Knight*, the sales installment contract in *Knight* did not attempt to incorporate any documents, so *Knight* is

inapposite. *Knight*, 81 A.3d at 948 (stating that the sales installment contract specified that it contained "the entire agreement"); *see also Dunn v. B&B Auto.*, No. 12–377, 2012 WL 2005223, at *3–4 (E.D. Pa. June 5, 2012) (holding that the arbitration agreement was enforceable, as the sales installment contract included a checked box stating "Arbitration Agreement Attached" and the arbitration agreement was expressly incorporated into the sales installment contract). Kent's conclusory and unsupported assertion is unavailing.

As the signed Arbitration Agreement between Kent and DriveTime "is a part of this [Sales Installment] Contract," the Arbitration Agreement is enforceable. (Doc. No. 1-5, Ex. A, pp. 18, 69.)

### IV.

Because the Arbitration Agreement is enforceable, and because there are no other issues in dispute, the Court grants DriveTime's motion to compel arbitration and stay proceedings. *See* 9 U.S.C. §§ 3–4.

An appropriate order follows.